*Mashour Howling v. State of Maryland*, No. 35, September Term, 2021; *Funiba Abongnelah v. State of Maryland*, No. 36, September Term, 2021. Opinion by Hotten, J.

## CRIMINAL LAW – STATUTORY INTERPRETATION – PROHIBITED POSSESSION OF FIREARM AND AMMUNITION

The United States Supreme Court in *Rehaif v. United States*, 588 U.S. ___,139 S. Ct. 2191 (2019) interpreted 18 U.S.C. § 922(g), a federal statute prohibiting possession of a firearm, to require proof of the defendant's knowledge of possessing a firearm and proof of the defendant's knowledge of *status* as a person prohibited from possessing a firearm. The Court of Appeals declined to apply the reasoning of *Rehaif* to its interpretation of Md. Code Ann., Public Safety ("Pub. Safety") § 5-133 and § 5-133.1 because the plain text, legislative history, and relevant case law did not require the State to prove the defendant's knowledge of status as a person prohibited from possessing a firearm and ammunition.

## CRIMINAL LAW – JURY INSTRUCTION – PROHIBITED POSSESSION OF FIREARM

A circuit court has broad discretion when delivering a jury instruction, but abuses its discretion by delivering an instruction that is not a correct statement of law. *Cost v. State*, 417 Md. 360, 368, 10 A.3d 184, 189 (2010). The Court held that the circuit court did not abuse its discretion by declining to give a jury instruction stating that the State must prove knowledge of prohibited status pursuant to Pub. Safety § 5-133. The circuit court correctly propounded the Maryland Pattern Jury Instruction, which provides that the State must only prove, with respect to the *mens rea* element of Public Safety § 5-133, the defendant's knowledge of possession of a firearm.

## CRIMINAL LAW – SUFFICIENCY OF EVIDENCE – PROHIBITED POSSESSION OF FIREARM

The State satisfies its burden of evidentiary sufficiency when "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. McGagh*, 472 Md. 168, 194, 244 A.3d 1117, 1131–32 (2021) (citations omitted) (emphasis in original). The Court held that the State provided sufficient evidence to convict the defendant of possession of a prohibited firearm pursuant to Pub. Safety § 5-133. The State entered into evidence a jail call recording in which the defendant admitted to possessing a firearm on his person at the time of arrest. The defendant also stipulated to a prior felony conviction, which prohibited possession of a firearm pursuant to Pub. Safety § 5-133. The State did not need to provide evidence that the defendant also knew that his prior conviction prohibited possession of a firearm pursuant to Pub. Safety § 5-133.

Circuit Court for Montgomery County
Case No. 135898C

Circuit Court for Montgomery County
Case No. 135936C

Argued: February 3, 2022

IN THE COURT OF APPEALS
OF MARYLAND

Nos. 35 & 36

September Term, 2021

_____

MASHOUR HOWLING
v.
STATE OF MARYLAND

_____

FUNIBA ABONGNELAH
v.
STATE OF MARYLAND

_____

*Getty, C.J.,
*McDonald,
Watts,
Hotten,
Booth,
Biran,
Battaglia, Lynne A. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Hotten, J.

_____

Filed: April 28, 2022

*Getty, C.J., and McDonald, J., now Senior
Judges, participated in the hearing and
conference of these cases while active
members of this Court; after being recalled
pursuant to Maryland Constitution, Article
IV, Section 3A, they also participated in the
decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

"There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge . . . from its definition." *Lambert v. California*, 355 U.S. 225, 228, 78 S. Ct. 240, 242 (1957). We consider whether the General Assembly intended to exclude the element of knowledge of a person's status as a person prohibited from possessing a regulated firearm and ammunition pursuant to Md. Code Ann., Public Safety (2018 Repl. Vol.) ("Pub. Safety") § 5-133 and § 5-133.1. This opinion consolidates two separate cases that collectively concern the possession of a prohibited firearm and ammunition by disqualified persons.

The defendants in each case, Mr. Mashour E. Howling ("Petitioner Howling") and Mr. Funiba T. Abongnelah ("Petitioner Abongnelah"), possessed a firearm at the time of arrest, while disqualified from doing so. Both cases proceeded separately to jury trials before the Circuit Court for Montgomery County. At varying points in the proceedings, each Petitioner requested that the respective circuit court adopt the reasoning of *Rehaif v. United States*, 588 U.S. ___,139 S. Ct. 2191 (2019), where the United States Supreme Court held that the federal statute 18 U.S.C. § 922(g) required proof of knowledge of possession of a firearm and proof of knowledge of the defendant's status as a person

prohibited from possessing a firearm.[1]  *Id.* at ___, 139 S. Ct. at 2200.  Petitioners requested

that the circuit court give a jury instruction incorporating the reasoning of *Rehaif.*[2]

The circuit court declined to give the requested jury instruction in each case.  Both

Petitioners moved for judgment of acquittal at the close of the State's case and renewed

the motion at the close of all evidence.  Pertinent to this appeal, Petitioner Abongnelah

argued that the State provided insufficient evidence to establish that he knew he was

prohibited from possessing a firearm.  The circuit court denied both motions in each case.

Two separate juries found Petitioners each guilty of possessing a firearm in violation

of Pub. Safety § 5-133.   Petitioner Howling  was  also  found  guilty  of  possessing

ammunition in violation of Pub. Safety § 5-133.1.  Petitioners separately appealed to the

---

[1] Petitioner Abongnelah appeared to argue at trial that pursuant to *Rehaif* the State must prove that he knew his prior felony conviction disqualified him from possession.  This argument misinterprets the holding of *Rehaif*.  He subsequently amended his argument on appeal, which we address *infra* at slip op. 36.

[2] Only Petitioner Howling's case concerned possession of prohibited ammunition pursuant to Pub. Safety § 5-133.1.  The State argues that Petitioner Howling failed to preserve the argument with respect to Pub. Safety § 5-133.1 because Petitioner Howling requested and received a jury instruction that did not include knowledge of status as an element of the crime.  Ordinarily, the issue with respect to Pub. Safety § 5-133.1 would be unpreserved pursuant to Md. Rule 8-131(a).  Given the close connection between Pub. Safety § 5-133.1 and Pub. Safety § 5-133, and the desire to provide guidance to lower courts that will frequently address the concurrent issue of possession of a firearm and ammunition, we exercise our discretion to reach the merits of whether Pub. Safety § 5-133.1 requires proof of knowledge of prohibited status.  *Jones v. State*, 379 Md. 704, 713, 843 A.2d 778, 783 (2004) ("Thus, under [Md. Rule 8-131(a)], an appellate court has discretion to excuse a waiver or procedural default and to consider an issue even though it was not properly raised or preserved by a party[]"); *see Crown Oil and Wax Co. of Delaware v. Glen Const. Co. of Virginia, Inc.*, 320 Md. 546, 561, 578 A.2d 1184, 1191 (1990) ("Even if the successor argument were a new issue, raised for the first time on appeal, this Court has discretion under [Md.] Rule 8-131(a) to consider it, and we exercise that discretion to consider the 'issue' in this case.").

Court of Special Appeals, which affirmed in separate unpublished opinions. *Abongnelah v. State*, No. 2561, Sept. Term, 2019, 2021 WL 1943262 (Md. Ct. Spec. App. May 11, 2021); *Howling v. State*, No. 2087, Sept. Term, 2019, 2021 WL 402519 (Md. Ct. Spec. App. Feb. 4, 2021). The Court of Special Appeals declined to adopt the reasoning of *Rehaif* in either case, and concluded that the State must prove, with respect to the *mens rea* element, only knowledge of possession of a regulated firearm pursuant to Pub. Safety § 5-133 (in both cases) and knowledge of possession of ammunition pursuant to Pub. Safety § 5-133.1 (in Petitioner Howling's case). Accordingly, the intermediate appellate court held that the circuit court did not abuse its discretion in declining to give Petitioners' requested jury instructions. The court also held in Petitioner Abongnelah's case that there was sufficient evidence to establish knowledge of possession of a regulated firearm.

Petitioners asked this Court to interpret Pub. Safety § 5-133 and § 5-133.1 to require knowledge of possession of a firearm and *knowledge of status* as a prohibited person. We granted *certiorari* on September 29, 2021 in each case, 476 Md. 258, 259 A.3d 797 (2021), to address the following questions presented:

> 1. In a question of first impression, did the [circuit] court err by giving a jury instruction that omitted a scienter requirement for the offenses charged, contrary to the holding of *Rehaif v. United States*, [588 U.S. ____,] 139 S. Ct. 2191 (2019), on the presumptions in law in the equivalent Federal Statute, the Rule of Lenity, and this Court's decisions in *Dawkins v. State*, 313 Md. 638[, 547 A.2d 1041] (1988) and *Chow v. State*, 393 Md. 431[, 903 A.2d 388] (2006)?
>
> 2. Under the facts of [Petitioner Howling's] case, in which no evidence was adduced that [Petitioner Howling] was previously notified by government authorities that he was prohibited from possessing a regulated firearm in Maryland, did the [circuit] court err in giving the pre-*Rehaif* pattern jury instructions lacking scienter requirements?

[3.] In a matter of first impression, did [the Court of Special Appeals] err by holding that the evidence was sufficient to convict Petitioner [Abongnelah] of illegally possessing a regulated firearm where the State failed to prove he had knowledge of his prohibited status - *i.e.*, that he was a convicted felon - because that result was inconsistent with the [United States] Supreme Court's interpretation of the analogous Federal statute in *Rehaif v. United States*, [588 U.S. ____,] 139 S. Ct. 2191 (2019), and was at odds with this Court's precedent?

[4.] Did [the Court of Special Appeals] err by upholding the [circuit] court's refusal to instruct the jury that the State was required to prove that Petitioner [Abongnelah] had knowledge of his prohibited status?

[5.] Was the knowledge issue raised [by Petitioner Abongnelah] adequately preserved where both trial and appellate counsel argued that *Rehaif* required knowledge of prohibited status and appellate counsel clarified in [Petitioner Abongnelah]'s Reply Brief [before the Court of Special Appeals] that prohibited status meant Petitioner [Abongnelah]'s status as a felon?

We answer the questions presented in the negative, and shall affirm the judgments of the Court of Special Appeals.

## FACTS AND PROCEDURAL BACKGROUND

### *Underlying Incidents*

A. Petitioner Howling

On March 20, 2019, Corporal Brian Rumsey of the Maryland National Capital Park and Planning Police Department was on a lunch break at a shopping center near Layhill Road in Silver Spring, Maryland. Corporal Rumsey observed two men in the shopping center parking lot "checking their surroundings, constantly looking around." Corporal Rumsey entered a nearby liquor store on the suspicion of a potential robbery. He noticed one of the two men at the counter and detected the smell of marijuana.

4

Corporal Rumsey followed the two men, who crossed Layhill Road and entered the passenger side of a parked truck in a nearby parking lot. Corporal Rumsey "flagged down" Officer Sean McKinney of the Montgomery County Police Department ("MCPD") in a marked cruiser and notified Officer McKinney of potential criminal activity. Officer McKinney approached the parked truck and detected a "strong odor of marijuana" emanating from the vehicle and/or its passengers. One of the men told Officer McKinney that they were waiting for their friend, later identified as Petitioner Howling, who was getting a haircut at the nearby barbershop.

Law enforcement searched the truck[3] and found a rental agreement in Petitioner Howling's name, a loaded Glock semiautomatic handgun, two magazines of ammunition for the handgun, and approximately $4,100 in cash. Two officers located Petitioner Howling in the barbershop and arrested him.

During a police interview with Detective Tomasz Machon of the MCPD, Special Investigation Division, Petitioner Howling explained that he lived in Pennsylvania but had traveled to Montgomery County, where his mother resides, for a doctor's appointment. His two friends, who initially drew the attention of Corporal Rumsey, wanted to accompany him on the trip. Petitioner Howling told Detective Machon that the handgun was registered to him in Pennsylvania, and he did not realize the handgun was in the car "until on the way

---

[3] Officer Rumsey testified during the suppression hearing that he received consent to search the truck. The suppression court did not reach the issue of consent, but found that the odor of marijuana provided probable cause to search the vehicle. Petitioner Howling did not challenge the decision of the suppression court on appeal.

5

down[.]" Petitioner Howling also informed Detective Machon that he was convicted of simple assault in Pennsylvania.[4] When the interviewing officer advised that Maryland law prohibited possession of a firearm following conviction of simple assault in Pennsylvania, Petitioner Howling claimed that he did not intentionally bring the handgun into Maryland. The State charged Petitioner Howling with possession of a firearm by a prohibited person pursuant to Pub. Safety § 5-133(c), transportation of a loaded handgun in a vehicle pursuant to Md. Code Ann., Criminal Law ("Crim. Law") § 4-203(a)(1)(v), and possession of ammunition by a prohibited person pursuant to Pub. Safety § 5-133.1.

B. Petitioner Abongnelah

In April 2019, Detective Machon began monitoring an Instagram account with the handle "gg_mikey", believed to be used by Petitioner Abongnelah. Prince George's County law enforcement had been monitoring the account since Petitioner Abongnelah's release from prison in 2018, and tipped off Detective Machon that Petitioner Abongnelah may be involved in prohibited firearms activity within Montgomery County.

On June 5, 2019, at 1:53 a.m., a video was posted to the Instagram account that depicted a person shooting a Kel-Tec handgun at a distant car with flashing red and blue lights. A voice in the video stated, "I'ma shoot the police." Based on the video, other photos and videos posted to the Instagram account, and Petitioner Abongnelah's MVA photo, Detective Machon concluded that Petitioner Abongnelah was the person firing the

---

[4] Petitioner Howling was convicted of simple assault in 2002, a misdemeanor in Pennsylvania. Petitioner Howling was sentenced to eighteen months of probation, twenty hours of community service, and ordered to pay a fine and other costs. Pennsylvania law permits the possession of firearms by individuals convicted of simple assault.

weapon in the video. Detective Machon also identified the serial number of the firearm in the video and discovered that the firearm had been reported stolen in August 2018.

On the same day as the Instagram posting, MCPD officers applied for a search warrant for Petitioner Abongnelah's apartment. In the interim, undercover officers surveilled the outside of his apartment building. The officers witnessed Petitioner Abongnelah leave his apartment and enter a vehicle with a driver and two passengers. Officers followed the vehicle to a shopping center, where Sergeant Charlie Bullock testified that he believed he observed Petitioner Abongnelah make a drug exchange outside of a bank. When MCPD stopped Petitioner Abongnelah's vehicle, Petitioner Abongnelah fled. Officers caught Petitioner Abongnelah and arrested him. Officers searched his person, and found a loaded firearm in his pocket. The parties stipulated that at the time of his arrest, Petitioner Abongnelah was under twenty-one and a convicted felon.

The State charged Petitioner Abongnelah with possession of a firearm by a convicted felon in violation of Pub. Safety § 5-133(c) and possession of a firearm by a person under the age of twenty-one pursuant to Pub. Safety § 5-133(d).

### Circuit Court Proceedings

A. Petitioner Howling

Petitioner Howling moved to suppress evidence seized from the pick-up truck. Following a suppression hearing on September 19, 2019, the circuit court denied Petitioner Howling's motion in a memorandum opinion and order. The case proceeded to a jury trial on October 15, 2019. The State presented witness testimony and exhibits that demonstrated Petitioner Howling was in possession of the firearm at the time of the arrest. In a recorded

7

interview between Petitioner Howling and Detective Machon, Petitioner Howling admitted to possessing the firearm:

> [Detective] Machon:  Okay.  Well, what's the deal with that gun?
>
> [Petitioner] Howling: I didn't realize it was there until on the way down, I had money on me for stuff I had to pick up and stuff for tomorrow.  And I went to put that in the compartment, the gun.  It's my gun.  It's registered to me.
>
> ***
>
> [Detective] Machon: So in Maryland, . . . as far as the law goes, you can't possess a firearm if you're (unintelligible) and certain charges, you've been charged with in the past.  I see you initially had an assault.
>
> ***
>
> [Petitioner] Howling: . . . I didn't know [the firearm] was in there.  I wouldn't have brought it.
>
> [Detective] Machon: Okay.  It's not anybody else's in that car.  It's yours and you had possession of it.
>
> [Petitioner] Howling:  That's mine and my gun is in there.

The State then admitted evidence demonstrating that ammunition for the firearm was recovered from the vehicle.

At the close of the State's case, counsel for Petitioner Howling moved for judgment of acquittal, arguing that "[Petitioner] Howling was[ not] aware that he could[ not] have a firearm and ammunition in the [S]tate of Maryland based on his prohibited conviction." The State opposed the motion by arguing that "[k]nowledge of the law is not an element of the offenses charged."  The circuit court agreed with the State and denied the motion: "With respect to the argument of scienter of knowledge about the gun laws in Maryland,

8

the statute that prohibits a certain person[] from having a firearm is a strict liability offense. It does not require that intent be proven."

Counsel for Petitioner Howling renewed the motion for judgment for acquittal by arguing that the circuit court should adopt the reasoning of the United States Supreme Court in *Rehaif* and interpret Pub. Safety § 5-133(c) to require proof of knowledge that the defendant "belongs to the relevant category of persons barred from possessing a firearm." The circuit court denied the motion.

At the same time, Counsel for Petitioner Howling requested the circuit court provide a jury instruction incorporating the reasoning of *Rehaif*, arguing that the State must prove that Petitioner Howling "knew he was prohibited from having this firearm." The circuit court denied the request:

> [A] [circuit] court that uses a jury instruction other than a pattern jury instruction when there is a pattern jury instruction that directly addresses the elements at issue, does so at the [circuit] court's own peril.
>
> The appellate court in Annapolis has repeatedly in many cases warned trial judges about essentially going off base and giving instructions that are not the approved Maryland pattern jury instructions. There are some occasions upon which there is an issue that is not addressed in a Maryland pattern jury instruction but this isn't that case. I think this case does what is appropriate in this case and that is put the issue before the jury and the jury can decide whether the elements have been proven.

The circuit court delivered a near-identical version of Maryland Pattern Jury Instruction ("MPJI Cr.") § 4:35.6:

> The defendant is charged with possessing a regulated firearm after having been convicted of a crime that disqualified him from possessing a regulated firearm. In order to convict[] the defendant, the State must prove that the defendant knowingly possessed a regulated firearm and that defendant was previously convicted of a crime that disqualified him from possessing a

9

regulated firearm. The State and the defense agree and stipulate that the gun in this case is a regulated firearm.

The circuit court also delivered a jury instruction "[m]odified from MPJI Cr. § [4:35.6][,]" and requested by Petitioner Howling, for possession of ammunition by a disqualified person pursuant to Pub. Safety § 5-133.1:

> The defendant is charged with possession of ammunition having been convicted of a crime that disqualifies him from possessing ammunition. In order to convict the defendant the State must prove that the defendant knowingly possessed ammunition and that the defendant was previously convicted of a crime that disqualified him from possessing ammunition.

The jury convicted Petitioner Howling of possession of a firearm by a prohibited person, possession of ammunition by a prohibited person, and transporting a loaded a handgun in a vehicle. The circuit court sentenced Petitioner Howling to a suspended term of nine years' imprisonment, and three years of unsupervised probation.

B. Petitioner Abongnelah

Petitioner Abongnelah moved to suppress the firearm recovered from his person because it was obtained during a search incident to a warrantless arrest. The circuit court denied the motion and found probable cause to believe that Petitioner Abongnelah was in possession of a firearm as a convicted felon.[5] The case proceeded to a jury trial on October 30 and 31, 2019.

---

[5] The Court of Special Appeals affirmed the denial of the motion to suppress. Petitioner Abongnelah did not raise the issue on appeal before this Court.

The State introduced a jail call recording between Petitioner Abongnelah and an unidentified speaker. Petitioner Abongnelah admitted to possessing a firearm at the time of arrest:

Unidentified speaker: I'm nervous[, t]hat's all.

[Petitioner] Abongnelah: I'm good. I'm going to be all right. . . . It's just a gun charge. You know what I'm saying? It's not even a violent charge. I ain't, I ain't rob nobody or nothing, but I just got caught with one of my, one of my dogs, man.

\*\*\*

I'm just protecting myself, man. . . . I'm black, I may be dead. . . . I'm staying out of the way. . . . I just so happened to get pulled over, and my man got pulled over . . . and *I had a gun in my pocket*.

\*\*\*

[J]ust so you know, . . . these calls is recorded. So you know what I'm saying? Don't say nothing[.]

(Emphasis added).

The parties stipulated that Petitioner Abongnelah had a prior conviction that prohibited him from legally possessing a firearm. The circuit court instructed the jury that "the State and the defendant agree and stipulate that the defendant was previously convicted of a crime that disqualifies him from possessing a regulated firearm." The parties also stipulated to Petitioner Abongnelah's date of birth, which established that he was under the age of twenty-one at the time of possession of the firearm on June 5, 2019.

Counsel for Petitioner Abongnelah moved for judgment of acquittal at the close of the State's case, and renewed the motion at the close of evidence, arguing that there was

11

insufficient evidence that Petitioner Abongnelah knew his prior conviction prohibited possession of a firearm:

> [Counsel for Petitioner Abongnelah]: [T]he State presented zero evidence that he knew he was part of that prohibited class of people prohibited from possessing a firearm because of a crime of violence. . . . [A]t the end of last term, the [United States] Supreme Court . . . said in relation to the Federal Statute th[at] Congress intended for there to be a knowledge element. That knowledge element goes towards both elements knowing that he possessed the firearm and knowing that you are part of that prohibited class.
>
> ***
>
> [T]here is *no evidence that he knew or that he was ever made aware that because of that prior conviction he was prohibited from possessing a firearm.*
>
> ***
>
> THE COURT: . . . The law does not require at this time that [Petitioner Abongnelah] was aware that he was a disqualified person in possession of a regulated firearm. So, the State has satisfied its requisite burden with respect to a motion for judgment of acquittal as to the elements of the crime charged.

(Emphasis added).

Counsel for Petitioner Abongnelah requested a jury instruction stating that the State must prove knowledge of prohibited status, which the circuit court denied. The circuit court delivered a substantially similar instruction to the one given in Petitioner Howling's case.[6] Counsel for Petitioner Abongnelah renewed his motion to add an instruction

---

[6] The circuit court also gave a substantially similar instruction for possession of a firearm under the age of twenty-one:

> The defendant is charged with possessing a regulated firearm when he was under the age of 21. In order to convict the defendant, the State must prove one, that the defendant knowingly possessed a regulated firearm and two,

(continued …)

12

consistent with *Rehaif* which "makes knowledge of his being prohibited from having a gun an element."

The jury found Petitioner Abongnelah guilty of being a person with a felony conviction in possession of a firearm in violation of Pub. Safety § 5-133(c) and possession of a firearm under the age of twenty-one in violation of Pub. Safety § 5-133(d). The circuit court sentenced Petitioner Abongnelah to eight years of incarceration, with all but the mandatory five-year minimum suspended for the possession of a regulated firearm with a felony conviction. The circuit court also placed Petitioner Abongnelah on supervised probation for five years. For the possession of a regulated firearm while under twenty-one, the circuit court sentenced Petitioner Abongnelah to five years of incarceration with all but two years suspended and five years of supervised probation to run concurrently with the possession of a firearm with a felony conviction.

### *The Opinions of the Court of Special Appeals*

A. The Howling Opinion

The Court of Special Appeals affirmed the decision of the circuit court. The intermediate appellate court did not find *Rehaif* "dispositive" because it involved the interpretation of a federal statute and did not announce a rule of constitutional law that

---

(. . . continued)

> that the defendant was under 21 years of age at the time of that possession. The State and the defendant agree and stipulate that the defendant's age was under the age of 21 on June 5, 2019.

13

would be binding on the states. *Howling*, 2021 WL 402519 at \*4 (quoting *Mata v. United States*, 969 F.3d 91, 93 (2d Cir. 2020)) ("the [United States] Supreme Court 'was simply construing a [federal] statute.'").

After rejecting the application of *Rehaif*, the court found that its recent decision in *Brice v. State*, 225 Md. App. 666, 126 A.3d 246 (2015), was controlling. In *Brice*, the court noted that "[t]here is no language in the statute requiring a defendant to know that he [or she] is disqualified. . . ." *Id.* at 694, 126 A.3d at 263. Therefore, according to the court, "to satisfy the *mens rea* requirement for [Pub. Safety §] 5-133, the State [is] required to prove only that the defendant knew that he [or she] [is] in possession of a handgun." *Id.* at 694, 126 A.3d at 263. Applying the analysis from *Brice* to the instant case, the court found that "the State was only required to prove that [Petitioner] Howling knew he was in possession of a firearm and ammunition, not that [Petitioner] Howling knew his Pennsylvania conviction disqualified him from possessing a regulated firearm and ammunition in Maryland." *Howling*, 2021 WL 402519 at \*6.

The court concluded that Petitioner Howling's requested jury instructions predicated on the reasoning of the United States Supreme Court in *Rehaif* were not correct statements of Maryland law. The Court of Special Appeals held that the circuit court did not abuse its discretion by declining to give the requested jury instructions and by giving the pattern jury instructions instead. *Id.*

B. The Abongnelah Opinion

The Court of Special Appeals also affirmed the circuit court in Petitioner Abongnelah's case. Similar to Petitioner Howling's case, the intermediate appellate court

14

declined to adopt the reasoning of the United States Supreme Court in *Rehaif*, which "held that the government must prove that not only did the defendant *knowingly possess* a firearm in violation of [18 U.S.C.] § 922(g) but also that the defendant *knew of his status as a prohibited person* under [18 U.S.C.] § 922(g)." *Abongnelah*, 2021 WL 1943262 at *6 (citation and footnote omitted) (emphasis added). By declining to adopt *Rehaif*, the court concluded that "the State only needs to prove that a defendant [knew] they [were] in possession of a firearm." *Id.* at *7.

The court found that the State provided sufficient evidence to establish Petitioner Abongnelah's knowledge of possession of a regulated firearm. MCPD officers testified that a firearm was recovered on Petitioner Abongnelah's person. *Id.* A video posted to Petitioner Abongnelah's Instagram account indicated that Petitioner Abongnelah shot at what appeared to be a police vehicle using the same firearm. *Id.* Finally, in a jail call recording, Petitioner Abongnelah admitted that he was arrested while possessing a firearm. *Id.*

In a Reply Brief submitted to the court, Petitioner Abongnelah argued that the State must prove that the defendant *knew he was a felon at the time of the incident*. The court declined to address this argument because it was not raised in the circuit court or opening briefs. *Id.* Assuming *arguendo* that knowledge of status was required, the court found that the State met its evidentiary burden because Petitioner Abongnelah stipulated to the fact that he committed a prior felony, which prohibited him from possessing a firearm pursuant to Pub. Safety § 5-133(c). *Id.* at *8.

15

The court rejected Petitioner Abongnelah's argument that the circuit court erred by not giving a jury instruction aligned to *Rehaif*. *Id.* Since it had already concluded that *Rehaif* did not apply to Maryland law, the Court of Special Appeals held that the circuit court did not err by giving a jury instruction that, with respect to the *mens rea* element, only required knowledge of possession of a prohibited firearm pursuant to Pub. Safety § 5-133(c).

### *The Contentions of the Parties*

A. Petitioner Howling

Petitioner Howling contends that this Court should adopt the reasoning of the United States Supreme Court in *Rehaif* and require that the State prove knowledge of a defendant's prohibited status pursuant to Pub. Safety § 5-133 and § 5-133.1. Petitioner Howling notes that similar to the United States Supreme Court in *Rehaif*, this Court also presumes a *mens rea* element of knowledge when interpreting criminal statutes. Applying this presumption to the instant case would "advance society at large and separate 'wrongful from innocent acts.'" (Citation omitted).

Petitioner Howling argues that recognizing a scienter requirement of knowledge of prohibited status would be consistent with this Court's decisions in *Chow v. State*, 393 Md. 431, 903 A.2d 388 (2006), and *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041 (1988). According to Petitioner Howling, *Chow* held that the defendant "must know that the activity they are engaging in is illegal." (Citation omitted). Petitioner Howling also reads *Dawkins* for the proposition that *mens rea*, including knowledge of illegal status, should be adjudicated by a jury. Petitioner Howling asserts that the need for an element of

16

knowledge is particularly acute "when multiple states have differing statutes[]" criminalizing possession.

Petitioner Howling asks this Court to discount the Court of Special Appeals' reasoning in *Brice*, because the legal analysis was "very abbreviated[]" and "the facts were so negative against the Appellant Brice[.]" Instead, Petitioner Howling contends that this Court should rely on the reasoning of *Lawrence v. State*, 475 Md. 384, 257 A.3d 588, 602 (2021), which analyzed whether the General Assembly intended for Crim. Law § 4-203 to be a strict liability crime, to find that Pub. Safety § 5-133 requires knowledge of prohibited status. Petitioner Howling argues that unlike Crim. Law § 4-203, Pub. Safety § 5-133 is modified by the word "knowingly" in Pub. Safety § 5-144, and any ambiguity regarding the statute should be resolved in favor of the defendant pursuant to the rule of lenity. Finally, Petitioner Howling asserts *arguendo* that if this Court does not generally recognize a knowledge of status requirement pursuant to Pub. Safety § 5-133, the facts in Petitioner Howling's particular case supported a jury instruction that specifically recognized the knowledge requirement.

B. Petitioner Abongnelah

Similar to Petitioner Howling's argument, Petitioner Abongnelah contends that there was insufficient evidence to establish a conviction of an illegal possession of a firearm because the State failed to prove that Petitioner Abongnelah knew that he belonged to the category of persons prohibited from possessing a firearm. According to Petitioner Abongnelah, the text of Pub. Safety § 5-133 imposes the requirement of knowledge of prohibited status by reference to Pub. Safety § 5-144, which includes the word

17

"knowingly[.]" The legislative history of the Public Safety Article, as explained by this Court in *Jones v. State*, 420 Md. 437, 23 A.3d 880 (2011), confirms this interpretation of the plain text.

Petitioner Abongnelah argues that even if *Rehaif* is not binding on this Court, it offers "a highly persuasive guide to reading" Pub. Safety § 5-133 because "the federal and Maryland statutes are directly analogous" and both the United States Supreme Court and this Court employ "the same presumption in favor of requiring *mens rea*. . . ." This presumption in favor of *mens rea* should, according to Petitioner Abongnelah, prompt this Court to recognize an element of knowledge of prohibited status even if it also concludes that Pub. Safety § 5-144 does not apply.

Petitioner Abongnelah asserts that the Court of Special Appeals incorrectly found *arguendo* that the parties' stipulation of Petitioner Abongnelah's prior felony conviction would have satisfied the element of knowledge of prohibited status. According to Petitioner Abongnelah, the stipulation did not establish knowledge of prohibited status at the time of offense. Petitioner Abongnelah also contends that the court erred by finding that the knowledge issue was unpreserved because defense counsel for Petitioner Abongnelah used language, both at trial, and in the opening brief to the Court of Special Appeals that argued "knowledge of [prohibited] status" was an element of Pub. Safety § 5-133.

Finally, like Petitioner Howling, Petitioner Abongnelah asserts that the circuit court erred by not giving a jury instruction stating that knowledge of prohibited status was an element of Pub. Safety § 5-133.

C. <u>The State</u>

In both cases, the State contends that the circuit court acted within its discretion in refusing to depart from the Maryland Pattern Jury Instructions, because the requested jury instructions by Petitioners were incorrect statements of law.

As a threshold issue, the State argues that Petitioner Howling's argument with respect to Pub. Safety § 5-133.1 and Petitioner Abongnelah's argument with respect to evidentiary sufficiency were unpreserved. According to the State, Petitioner Howling only requested a modified jury instruction for possession of a firearm by a prohibited person and did *not* request a modified jury instruction for possession of ammunition by a prohibited person pursuant to Pub. Safety § 5-133.1. The State notes that Petitioner Howling requested a jury instruction pursuant to Pub. Safety § 5-133.1 that omitted scienter language, which the circuit court used as the jury instruction. Petitioner Abongnelah's legal sufficiency argument was waived, according to the State, because Petitioner Abongnelah presented an argument on appeal that differed from the argument at trial. The State asserts that Petitioner Abongnelah's trial counsel presented an ignorance of the law argument, whereas appellate counsel argued, for the first time in a Reply Brief before the Court of Special Appeals, that the State must prove knowledge of prohibited status.

Assuming this Court reaches the merits of Petitioner Abongnelah's legal sufficiency argument, the State argues that Pub. Safety § 5-133 does not require proof of knowledge of prohibited status. The State also agrees with the Court of Special Appeals that even if Pub. Safety § 5-133 requires proof of knowledge, the stipulation of a prior conviction provided sufficient evidence.

19

The State argues that *Rehaif* does not apply to Pub. Safety § 5-133 because it construes a federal statute and does not announce a new principle of constitutional law. The State also identifies material differences between the state and federal statutes which warrant distinct interpretations by this Court. The federal statute at issue in *Rehaif* expressly stated that the word "knowingly" modifies the defendant's status, whereas Pub. Safety § 5-133 and § 5-133.1 do not. Therefore, according to the State, the circuit court did not abuse its discretion in either of Petitioners' cases by denying a jury instruction that incorporated the reasoning of *Rehaif*.

## DISCUSSION

### *Standard of Review*

A. <u>Jury Instruction</u>

A circuit court has broad discretion when determining whether a jury instruction is warranted by the facts of the case. *Carter v. State*, 366 Md. 574, 584, 785 A.2d 348, 353 (2001). We accordingly review the decision not to provide a jury instruction for abuse of discretion. *Cost v. State*, 417 Md. 360, 368, 10 A.3d 184, 189 (2010). We assess whether a circuit court abused its discretion in denying a request for a particular jury instruction by determining "(1) whether the requested instruction was a correct statement of the law; (2) whether it was applicable under the facts of the case; and (3) whether it was fairly covered [elsewhere or] in the instructions actually given." *Stabb v. State*, 423 Md. 454, 465, 31 A.3d 922, 929 (2011) (citations omitted); *see also* Md. Rule 4-325(c). Whether a jury instruction is a correct statement of law is subject to a *de novo* standard of review. *Seley-Radtke v. Hosmane*, 450 Md. 468, 482, 149 A.3d 573, 581 (2016).

20

B. Sufficiency of Evidence

We review sufficiency of evidence by asking whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. McGagh*, 472 Md. 168, 194, 244 A.3d 1117, 1131–32 (2021) (citations omitted) (emphasis in original).

**Analysis**

**A. The holding of *Rehaif* is not applicable to Pub. Safety § 5-133 and § 5-133.1, and neither section requires proof of knowledge of status.**

As a general principle, interpretations of federal statutes are not binding on this Court's interpretations of State statutes. *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 481, 914 A.2d 735, 742 (2007); *Pope v. State*, 284 Md. 309, 320 n.10, 396 A.2d 1054, 1061 n.10 (1979). This principle also applies to the decisions of the United States Supreme Court, unless the decision relies upon or announces a principle of constitutional law. *State v. Matusky*, 343 Md. 467, 490, 682 A.2d 694, 705 (1996).

The United States Supreme Court's interpretation of 18 U.S.C. § 922(g) neither relied upon nor announced a principle of constitutional law. The scope of the Court's review was limited to ordinary statutory interpretation of "*congressional intent*." *Rehaif*, 588 U.S. at ___, 139 S. Ct. at 2195 (emphasis added); *see Staples v. United States*, 511 U.S. 600, 605, 114 S. Ct. 1793, 1796–97 (1994) (noting the determination of required mental state for commission of a federal crime requires "construction of the statute and . . . inference of the intent of Congress[]") (citation omitted). Therefore, the Court of Special

21

Appeals correctly concluded, in each of Petitioners' cases, that the holding of *Rehaif* does not bind Maryland courts.

Petitioners argue that even if *Rehaif* does not bind this Court, it offers highly persuasive reasoning because the state and federal statutes are analogous, and both this Court and the United States Supreme Court recognize a presumption of *mens rea* when interpreting criminal statutes. We are not persuaded by these arguments and find *Rehaif* distinguishable based on our case law and express textual differences between Pub. Safety § 5-133 and 18 U.S.C. § 922.[7]

Similarity between a Maryland and a federal statute is not sufficient justification for this Court to apply a federal court's interpretation of a federal statute to a Maryland statute. "Maryland appellate courts have interpreted state statutes, rules, and constitutional provisions differently than analogous federal provisions on numerous occasions, *even where the state provision is modeled after its federal counterpart*." *Haas*, 396 Md. at 482 n.10, 914 A.2d at 742 n.10 (emphasis added).[8] "Maryland courts sometimes prefer interpretations of state statutes varying from similar federal statutes[.]" *Id.*, 914 A.2d at 742 n.10.

---

[7] Petitioner Howling did not expressly argue that the reasoning of *Rehaif* applies to Pub. Safety § 5-133.1, so we note that our conclusion as to Pub. Safety § 5-133 applies to § 5-133.1 as well.

[8] "Put in a more homespun idiom, and paraphrasing a frequent [parental] admonition, '[j]ust because [Congress] ran off a cliff doesn't mean [the General Assembly] has to follow suit.'" *Haas*, 396 Md. at 482 n.10, 914 A.2d at 742 n.10.

In *Quality Discount Tires, Inc. v. Firestone Tire & Rubber Co.*, 282 Md. 7, 12, 382 A.2d 867, 870 (1978), this Court considered whether the legal standard articulated by the United States Supreme Court with respect to price-fixing under the federal Sherman Antitrust Act should apply to plaintiffs bringing claims under the analogous Maryland Antitrust Act. The General Assembly stated that the purpose of the Maryland Antitrust Act was to "complement the body of federal law," and that, in construing the Act, the courts should "be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters." *Id.* at 10, 382 A.2d at 869 (quoting Md. Code Ann., Commercial Law § 11-202(a) (1975, 1977 Cum. Supp.)). This Court accordingly examined how the United States Supreme Court and the federal circuits have applied the legal standard under the Sherman Antitrust Act. *Id.* at 12, 382 A.2d at 870. Despite the similarities in the statutes, and the General Assembly's express statutory directive to turn to federal interpretation for guidance, this Court recognized that it was "not bound" by the opinions of federal courts and concluded that the particular federal legal standard did not apply to the Maryland Antitrust Act. *Id.* at 16, 382 A.2d at 872.

*Quality Discount Tires* demonstrates that this Court need not import federal interpretations of a statute, even when a federal and state statute share a similar purpose and legislative history.[9] Pub. Safety § 5-133 and 18 U.S.C. § 922(g) may share the same

---

[9] Petitioners suggest that Pub. Safety § 5-133 shares a legislative history with 18 U.S.C. § 922(g). The General Assembly modeled the Maryland Gun Violence Act after the federal Gun Control Act of 1968; therefore, according to Petitioners, Pub. Safety § 5-133 should be given a construction similar to its federal counterpart, 18 U.S.C. § 922(g).

(continued . . .)

purpose to criminalize possession of firearms under certain conditions, but the textual differences in *mens rea* language highlight how Congress and the General Assembly intended to take separate paths in criminalizing possession of regulated firearms.

The federal statute plainly requires the text of 18 U.S.C. § 924, which contains the word "knowingly[,]" to be read in conjunction with the text of 18 U.S.C. § 922(g). 18 U.S.C. § 924 provides in pertinent part: "Whoever *knowingly violates subsection . . . (g) . . . of section 922* shall be fined as provided in this title, imprisoned not more than 10 years, or both." (Emphasis added). 18 U.S.C. § 922(g) provides in pertinent part: "It shall be unlawful for any person . . . who, being an alien--[] is illegally or unlawfully in the United States[] . . . to ship or transport in interstate or foreign commerce, or *possess* in or affecting commerce, *any firearm or ammunition*[.] . . ." (Emphasis added).

Reading these sections together, the United States Supreme Court in *Rehaif* observed that the word "knowingly" in § 924(a)(2) expressly modifies § 922(g). "And everyone agrees that the word 'knowingly' applies to § 922(g)'s possession element, which

---

(. . . continued)

While Pub. Safety § 5-133 fits within a broader statute that shares a legal history with a federal act, nowhere within the specific legislative history of Pub. Safety § 5-133 (or § 5-133.1) did the General Assembly indicate that Maryland courts should look to federal law or federal cases for guidance. Even if Pub. Safety § 5-133 was at one point directly inherited from 18 U.S.C. § 922(g), the material differences in the plain language of the statutes necessitate different interpretations. *Cf. Office of the State Prosecutor v. Judicial Watch, Inc.*, 356 Md. 118, 138, 737 A.2d 592, 603 (1999) (noting that the persuasiveness of the interpretation of a federal statute depends on its substantive similarity to a corresponding state statute: "Where the purpose and language of a federal statute are *substantially* the same as that of a later state statute, interpretations of the federal statute are ordinarily persuasive.") (citation omitted) (emphasis added).

is situated after the status element." *Rehaif*, 588 U.S. at ___, 139 S. Ct. at 2196. "We see no basis to interpret 'knowingly' as applying to the second § 922(g) element but not the first." *Id.* at ___, 139 S. Ct. at 2196 (citation omitted). "To the contrary, we think that by specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." *Id.* at ___, 139 S. Ct. at 2196.

The United States Supreme Court concluded that Congress intended to criminalize possession of a firearm when the person knows they are "illegally or unlawfully in the United States" and "possess[ing] . . . any firearm or ammunition." 18 U.S.C. § 922(g).[10] The plain text of 18 U.S.C. § 924(a) indicates that the word "knowingly" applies to *all* of the elements of 18 U.S.C. § 922(g).

While the plain text of 18 U.S.C. § 924(a) requires knowledge of prohibited status, the plain text of Pub. Safety § 5-133(b) only requires knowledge of the defendant's *possession* of a firearm.

Pub. Safety § 5-133 provides in pertinent part:

(b) Subject to § 5-133.3 of this subtitle, a person may not possess a regulated firearm if the person:

(1) has been convicted of a disqualifying crime;

(2) has been convicted of a violation classified as a common law crime and received a term of imprisonment of more than 2 years;

---

[10] The United States Supreme Court noted the "statutory text supports the presumption [of scienter]." *Rehaif*, 588 U.S. at ___, 139 S. Ct. at 2195. The Court defined the presumption of scienter as "a presumption that criminal statutes require the degree of knowledge sufficient to 'mak[e] a person legally responsible for the consequences of his or her act or omission.'" *Id.* at ___, 139 S. Ct. at 2195 (citation omitted).

25

(c)(1) A person may not possess a regulated firearm if the person was previously convicted of:

>   (i) a crime of violence;

>   (iii) an offense under the laws of another state or the United States that would constitute one of the crimes listed in item (i) . . . of this paragraph if committed in this State.

(2)(i) Subject to paragraph (3) of this subsection, a person who violates this subsection is guilty of a felony and on conviction is subject to imprisonment not for less than 5 years and not exceeding 15 years.

>   (ii) The court may not suspend any part of the mandatory minimum sentence of 5 years.

>   (iii) Except as otherwise provided in § 4-305 of the Correctional Services Article, the person is not eligible for parole during the mandatory minimum sentence.

(3) At the time of the commission of the offense, if a period of more than 5 years has elapsed since the person completed serving the sentence for the most recent conviction under paragraph (1)(i) or (ii) of this subsection, including all imprisonment, mandatory supervisor, probation, and parole:

>   (i) the imposition of the mandatory minimum sentence is within the discretion of the court; and

>   (ii) the mandatory minimum sentence may not be imposed unless the State's Attorney notifies the person in writing at least 30 days before trial of the State's intention to seek the mandatory minimum sentence.

(d)(1) Except as provided in paragraph (2) of this subsection, a person who is under the age of 21 years may not possess a regulated firearm.

26

When interpreting the language of a Maryland statute, the "cardinal rule" of statutory construction "is to determine what the [General Assembly] intended, and, as we have so often said, to do that, we turn first to the words used by the [General Assembly], giving them their ordinary meaning." *Dimensions Health Corp. v. Maryland Ins. Admin.*, 374 Md. 1, 17, 821 A.2d 40, 50 (2003). If "no construction or clarification is needed or permitted . . . a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation." *Id.*, 821 A.2d at 50 (citations omitted).

The plain text of Pub. Safety § 5-133 omits *mens rea* language of knowledge. The statute uses the word "possess", which this Court has interpreted to require *knowledge* of possession. *Parker v. State*, 402 Md. 372, 407, 936 A.2d 862, 883 (2007) ("A possession conviction normally requires knowledge of the illicit item. . . . Knowledge of the presence of an object is normally a prerequisite to exercising dominion and control.") (citations and quotation marks omitted). The plain text of Pub. Safety § 5-133.1 similarly omits *mens rea* language and uses the word possess.[11]

---

[11] Pub. Safety § 5-133.1 provides:

(a) In this section, "ammunition" means a cartridge, shell, or any other device containing explosive or incendiary material designed and intended for use in a firearm.

(b) A person may not possess ammunition if the person is prohibited from possessing a regulated firearm under § 5-133 (b) or (c) of this subtitle.

(c) A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both.

27

In criminalizing the possession of a firearm and ammunition by a disqualified person, the clear intent of the General Assembly was to require only knowledge of that possession. *Lillian C. Blentlinger, LLC v. Cleanwater Linganore, Inc.*, 456 Md. 272, 294, 173 A.3d 549, 562 (2017) ("[W]e neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning.").

This analysis is also consistent with our case law interpreting the *mens rea* element of criminal statutes. "[T]he General Assembly has 'wide latitude' to dictate the statutory elements of its criminal enactments." *Lawrence*, 475 Md. at 408, 257 A.3d at 602 (citation omitted). In *Lawrence*, this Court assessed whether Crim. Law § 4-203(a)(1)(i) established a strict liability offense of wearing, carrying, or transporting a handgun on or about the person. *Id.* at 389, 257 A.3d at 591. After examining the plain text, legislative history, and relevant case law of the statute, this Court concluded:

> [T]he General Assembly exercised its discretion in declining to include language indicating *mens rea* in [Crim. Law] § 4-203(a)(1)(i). While Mr. Lawrence's argument in favor of a presumption of *mens rea* is well-founded, *it fails to overcome the significant indicia of legislative intent to the contrary in this case*. . . . [T]he text and structure of [Crim. Law] § 4-203 make it clear that the General Assembly did not intend to include 'knowledge' as an element of subparagraph (a)(1)(i).

*Id.* at 412, 257 A.3d at 604–05 (emphasis added).

Unlike Crim. Law § 4-203(a)(1)(i) in *Lawrence*, in which this Court determined that the statute lacked an element of knowledge, Maryland appellate courts have repeatedly recognized that the General Assembly intended to *only require* the *mens rea* element of

28

knowledge of possession pursuant to Pub. Safety § 5-133. *Parker*, 402 Md. at 407, 936 A.2d at 883 ("In order for the evidence supporting the handgun possession conviction to be sufficient, it must demonstrate either directly or inferentially that Parker exercised 'some dominion or control over the prohibited [item]'. . . . Knowledge of the presence of an object is normally a prerequisite to exercising dominion and control.") (alteration in original) (citation and other marks omitted); *Hogan v. State*, 240 Md. App. 470, 516–17, 205 A.3d 101, 127–28 (2019) ("The *mens rea* of simple unlawful possession requires only the defendant's awareness that he is in actual possession of the item he is not permitted to possess. The charge of which appellant was convicted did require proof of *mens rea*, but not the *mens rea* appellant suggests. Although [Pub. Safety §] 5-133(b) is silent concerning the *mens rea* required, *the Court of Appeals has held that a 'possession conviction normally requires knowledge of the illicit item.'*") (citations omitted) (emphasis added); *Brice*, 225 Md. App. at 694, 126 A.3d at 263 ("to satisfy the *mens rea* requirement for a violation of Section 5-133, the State was required to prove only that [the] defendant knew that he [or she] was in possession of a handgun[]"); *McNeal v. State*, 200 Md. App. 510, 524, 28 A.3d 88, 96 (2011) (holding that the circuit court correctly instructed the jury "when it said: 'the State has the obligation to prove . . . knowledge on the part of' [the defendant] that 'he was in possession of a handgun[]'").

None of the Maryland cases interpreting Pub. Safety § 5-133 have extended the knowledge requirement to prohibited status. While Petitioners cite *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041 (1988), and *Chow v. State*, 393 Md. 431, 903 A.2d 388 (2006), for the proposition that Pub. Safety § 5-133 and § 5-133.1 require knowledge of prohibited

status, these cases support our conclusion that the plain text of Pub. Safety § 5-133 and § 5-133.1 does not.

In *Dawkins*, this Court acknowledged the presumption of a *mens rea* element for all crimes: "[t]here can be no crime, large or small, without an evil mind. . . . It is, therefore, a principle of our legal system . . . that the essence of the offense is the wrongful intent, without which it cannot exist." *Id.* at 643, 547 A.2d at 1043 (citing 1 Bishop's Crim. Law, § 287 (9th ed. 1923)). The *Dawkins* Court applied this presumption to Md. Code (1957, 1987 Repl. Vol.), Art. 27, § 287(a) and (d)[12] to find that "knowledge" is an element of the offenses of possession of a controlled dangerous substance and possession of controlled paraphernalia. *Id.* at 649, 547 A.2d at 1046.

Similar to the statute at issue in *Dawkins*, Pub. Safety § 5-133 does not use the word "knowingly" or "knowledge". Accordingly, and like the statute only criminalizing knowing *possession* in *Dawkins*, Pub. Safety § 5-133 only criminalizes knowledge of *possession* of a regulated firearm by a prohibited person. *Dawkins* supports our conclusion

---

[12] Art. 27, § 287, provided in pertinent part:

Except as authorized by this subheading, it is unlawful for any person:

(a) To possess or administer to another any controlled dangerous substance, unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his [or her] professional practice.

\*\*\*

(d) To possess or distribute controlled paraphernalia.

*Dawkins*, 313 Md. at 640 n.1, 547 A.2d at 1041 n.1.

30

that the *mens rea* element of knowledge contained in Pub. Safety § 5-133 only applies to possession.

Chow is distinguishable because the defendant in *Chow* and Petitioners in the instant case were charged under different sections of the Public Safety Article, which by their plain text, require different *mens rea* elements. In *Chow*, the defendant was charged under Md. Code (1957, 1996 Repl. Vol., 2002 Supp.), Art. 27, § 449.[13] 393 Md. at 434, 903 A.2d at 389. This Court examined the scope of the *mens rea* element of knowledge pursuant to Art. 27, § 449:

> (f) *Knowing participants in sale, rental, etc.*—Except as otherwise provided in this section, any dealer or person who *knowingly participates in the illegal sale, rental, transfer, purchase, possession, or receipt* of a regulated firearm in violation of this subheading shall be guilty of a misdemeanor and upon conviction shall be fined not more than $10,000 or imprisoned for not more than 5 years, or both. Each violation shall be considered a separate offense.

393 Md. at 463, 903 A.2d at 407 (emphasis added).

This Court held that the statute requires that the "actor must know that he or she is committing an 'illegal sale.'" *Id.* at 471, 903 A.2d at 412. Unlike the statute in Pub. Safety § 5-133, which omits any "knowledge" language, Art. 27, § 499 plainly subjected a person who "knowingly participates in the *illegal . . . possession . . .* of a regulated firearm" to criminal penalty. (Emphasis added). The *Chow* Court found the word "knowingly" unambiguously indicated the intent of the General Assembly to require, pursuant to Art. 27 § 499, proof that the defendant had knowledge of the act of possession of a regulated

---

[13] In 2013, this section was recodified at Pub. Safety § 5-144.

firearm and knowledge that such possession of a regulated firearm is illegal. *Id.* at 473, 903 A.2d at 413.

Unlike the statute in *Chow*, which used the word "knowingly" before prohibited status and possession, Pub. Safety § 5-133 neither includes the word "knowingly" nor one of its variants. While Petitioners are generally correct that this Court, like the United States Supreme Court, presumes a *mens rea* element, this presumption cannot override the clear intent of the General Assembly to attach a *mens rea* element of knowledge *only* to possession pursuant to Pub. Safety § 5-133. *Lawrence*, 475 Md. at 415, 257 A.3d at 606.

We are also not persuaded by Petitioners' argument that the word "knowingly" in Pub. Safety § 5-144 should modify the word "possess" in Pub. Safety § 5-133 in the same way that "knowingly" in 18 U.S.C. § 924(a)(2) modifies "possess" in 18 U.S.C. § 922(g), because the plain language of Pub. Safety § 5-144(a) expressly precludes application of its language to Pub. Safety § 5-133.

Pub. Safety § 5-144 provides:

(a) *Except as otherwise provided in this subtitle*, a dealer or other person may not:

> (1) knowingly participate in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subtitle; or

> (2) knowingly violate § 5-142 of this subtitle.

(b) A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both.

(c) Each violation of this section is a separate crime.

(Emphasis added).

Pub. Safety § 5-144(a) is a "catch-all" provision, which supplies a criminal penalty for, among other prohibited acts, possession of a firearm, but *only when not "otherwise provided in this subtitle."* *Jones*, 420 Md. at 450, 23 A.3d at 887 (quoting the substantially similar predecessor[14] to Pub. Safety § 5-144(a))(emphasis added). Pub. Safety § 5-133(c) is part of the "subtitle" referenced in Pub. Safety § 5-144(a). Pub. Safety § 5-133(c) also provides the specific penalty for possession, so by its plain language, the general "catch-all" provision pursuant to Pub. Safety § 5-144(a) does not apply to Pub. Safety § 5-133. *See Massey v. Sec'y, Dept. of Pub. Safety and Corr. Servs.*, 389 Md. 496, 511 n.4, 886 A.2d 585, 594 n.4 (2005) ("The question is one of legislative intent, and we have long followed the rule that, when there is a conflict between a general statute and one dealing specifically with the issue at hand, the specific statute controls.") (citation omitted).[15] Petitioners' application of the word "knowingly" contained in Pub. Safety § 5-144 to Pub. Safety § 5-133 would necessarily ignore the clause, "[e]xcept as otherwise provided in this subtitle[,]" thereby impermissibly rendering the clause nugatory. *Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 303, 783 A.2d 667, 671 (2001) (noting statutes must be read to

---

[14] The *Jones* Court was interpreting Pub. Safety § 5-143 (2003), which was renumbered as Pub. Safety § 5-144 in 2013.

[15] Notably, Pub. Safety § 5-133(d) does *not* provide a specific penalty provision for possession of a regulated firearm by a person under the age of twenty-one. The absence of a specific penalty provision indicates that the "catch-all" language pursuant to Pub. Safety § 5-144(a) would apply. We need not address this particular issue because Petitioner Abongnelah did not challenge the sufficiency of evidence supporting his conviction pursuant to Pub. Safety § 5-133(d).

33

avoid rendering "any portion, meaningless, surplusage, superfluous or nugatory[]")
(citation omitted).

This interpretation of the specific penalty provision of Pub. Safety § 5-133(c)
precluding application of the "catch-all" penalty provision of Pub. Safety § 5-144 accords
with this Court's holding in *Oglesby v. State*, 441 Md. 673, 109 A.3d 1147 (2015).  In
*Oglesby*, this Court stated "[t]here is no ambiguity . . . as to the penalty that the [General
Assembly] has authorized for a conviction [pursuant to Pub. Safety § 5-133]."  *Id.* at 698,
109 A.3d at 1162.  "[T]he General Assembly intended to provide for a mandatory minimum
sentence for a violation of [Pub. Safety] § 5-133(c)(1)(ii)."  *Id.*, 109 A.3d at 1162.  "[T]he
appropriate penalty for a violation of [Pub. Safety] § 5-133(c)(1)(ii) is the penalty the
[General Assembly] prescribed in [Pub. Safety] § 5-133(c)(2)."  *Id.* at 688, 109 A.3d at
1156.

Our plain language analysis conforms with the legislative history of the statute.
*Johnson v. State*, 467 Md. 362, 375, 225 A.3d 44, 51 (2020) ("[T]he modern tendency of
this Court is to continue the analysis of the statute beyond the plain meaning to examine
'extrinsic sources of legislative intent' in order to 'check [ ] our reading of a statute's plain
language[.]' . . .") (citations omitted).

Previous versions of Pub. Safety § 5-133 have consistently omitted language
indicating a knowledge requirement.  By declining to add a requirement of knowledge of
prohibited status over the course of several decades, the General Assembly has acquiesced
in Maryland appellate courts' interpretation of Pub. Safety § 5-133.  *See Lawrence*, 475
Md. at 414, 257 A.3d at 606; *Williams v. State*, 292 Md. 201, 210, 438 A.2d 1301, 1305

34

(1981) ("The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation.") (citation omitted).

In 2003, the General Assembly recodified existing public safety laws into the current Public Safety Article. The Bill File for S.B. 1 (Md. 2003) spans over 2,000 pages and provides no contrary evidence that the General Assembly intended, or even contemplated, adding knowledge of prohibited status to Pub. Safety § 5-133. The Public Safety Article Review Committee examined Pub. Safety § 5-133 and found some ambiguity in its language with respect to who may constitute a prohibited person, but there was no mention of whether the *mens rea* requirement of the statute was ambiguous.

We conclude that Pub. Safety § 5-133 and § 5-133.1 do not require the State to prove that the defendant had knowledge of prohibited status.

### B. The circuit court did not abuse its discretion by declining to give Petitioners' requested jury instructions.

The circuit court in each case declined to give jury instructions that deviated from Maryland Pattern Jury Instructions. Maryland Rule 4-325[16] governs the procedure that a court must follow when giving instructions to a jury. *Atkins v. State*, 421 Md. 434, 443, 26 A.3d 979, 984 (2011). A circuit court "must give a requested jury instruction where '(1)

---

[16] Maryland Rule 4-325(c) provides:

> The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

35

the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given.'" *Cost*, 417 Md. at 368–69, 10 A.3d at 189 (quoting *Dickey v. State*, 404 Md. 187, 197–98, 946 A.2d 444, 450 (2008)).

The circuit court provided the Maryland Pattern Jury Instruction for prohibited possession of a firearm:

> The defendant is charged with possessing a regulated firearm after having been convicted of a crime that disqualified [him] [her] from possessing a regulated firearm. In order to convict the defendant, the State must prove:
>
> (1) that the defendant knowingly possessed a regulated firearm; and
>
> (2) that the defendant was previously convicted of a crime that disqualified [him] [her] from possessing a regulated firearm.
>
> [The State and the defendant agree and stipulate that the gun in this case is a regulated firearm.] . . .

MPJI Cr. § 4:35.6.

As discussed above, this instruction correctly articulates the elements of Pub. Safety § 5-133. It requires the State to prove knowledge of possession of a firearm. By declining to modify the pattern jury instruction with the addition of knowledge of prohibited status, the circuit court provided the jury with instructions that correctly stated Maryland law.

### C. There was legally sufficient evidence to convict Petitioner Abongnelah pursuant to Pub. Safety § 5-133.

As a threshold issue, we agree with the Court of Special Appeals that Petitioner Abongnelah's argument with respect to knowledge of legal status should have been

36

rendered unpreserved for review by presenting a different argument for legal sufficiency on appeal than at trial. *Starr v. State*, 405 Md. 293, 301, 951 A.2d 87, 91 (2008); *see also Graham v. State*, 325 Md. 398, 416–17, 601 A.2d 131, 140 (1992); *State v. Lyles*, 308 Md. 129, 135–36, 571 A.2d 761, 764–65 (1986); *Muir v. State*, 308 Md. 208, 218–19, 517 A.2d 1105, 1110 (1986).

We exercise our discretion pursuant to Md. Rule 8-131(a) to reach the merits of the legal sufficiency issue to "promote the orderly administration of justice[]" and to prevent addressing the consolidated cases within this opinion "in a piecemeal fashion, thereby saving time and expense and accelerating the termination of litigation." *Jones v. State*, 379 Md. 704, 715, 843 A.2d 778, 784 (2004).

In assessing the sufficiency of the evidence to sustain a criminal conviction, it is the responsibility of the appellate court to determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Manion*, 442 Md. at 430, 112 A.3d at 513 (quoting *Taylor v. State*, 346 Md. 452, 457, 697 A.2d 462, 464 (1997)) (emphasis in original) (citation omitted). This Court adopted this standard from the United States Supreme Court case, *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

"[O]ur concern is only whether the verdict was supported by sufficient evidence, direct or circumstantial, which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *Taylor*, 346 Md. at 457, 697 A.2d at 465; *State v. Albrecht*, 336 Md. 475, 487, 649 A.2d 336, 341 (1994) ("[I]t is neither our

37

duty nor our role to assess the credibility of the witnesses who testified nor to weigh the evidence presented.  Rather, we shall only review that evidence which supported the State's case in order to determine whether *any* rational trier of fact could have convicted the defendant of the crimes charged.") (emphasis in original).

The State provided sufficient evidence that Petitioner Abongnelah knew that he possessed a firearm.  In a recorded jail call, Petitioner Abongnelah admitted that he possessed a firearm at the time of arrest: "I just so happened to get pulled over, and my man got pulled over . . . and *I had a gun in my pocket*."  (Emphasis added).  Petitioner Abongnelah also stipulated to his prior felony conviction that prohibits possession of a firearm pursuant to Pub. Safety § 5-133(b).  Therefore, we hold that there was legally sufficient evidence to convict Petitioner Abongnelah.

CONCLUSION

For the reasons previously expressed, we affirm the judgments of the Court of Special Appeals.

> **IN NO. 35, JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED.  COSTS TO BE PAID BY PETITIONER.**

> **IN NO. 36, JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED.  COSTS TO BE PAID BY PETITIONER.**